UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| McKINLEY ARCHIE, and KENNETH JOHNSON, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>JACK COOPER TRANSPORT COMPANY, LLC; JACK COOPER HOLDINGS, LLC; and JACK COOPER INVESTMENTS, INC.,<br><br>    Defendants. | Case No. _____<br><br>**JURY DEMANDED** |

# CLASS ACTION COMPLAINT

McKinley Archie and Kenneth Johnson (the "Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees as defined herein, brings this suit against Jack Cooper Transport Company, LLC, Jack Cooper Holdings, LLC and Jack Cooper Investments, Inc. (collectively "Jack Cooper") by way of this Class Action Complaint against Defendants, allege, as follows:

## NATURE OF THE ACTION

1. This is a Class Action Complaint brought under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act") by the

1

Plaintiffs on their own behalf and on behalf of the other similarly situated persons against Jack Cooper, their employer for WARN Act purposes.

2. On or about January 8, 2025, Jack Cooper lost a key customer when Ford Motor Company ("Ford") announced publicly it would not be renewing its contract with Jack Cooper. On or around January 2, 2025, Jack Cooper issued a WARN Act notice that employees at its 5114 Crittenden Dr, Louisville, KY 40209 terminal (the "Louisville Terminal") would be terminated effective January 31, 2025. Approximately 189 drivers and other employees are impacted by this plant closure. Jack Cooper is an over-the-road car-haul logistics company which principally transports vehicles from car manufacturing facilities to dealerships and other customers. As described in greater detail below, Jack Cooper had a duty under the WARN Act to provide at least 60 days advance written notice of the Louisville Terminal closure but failed to do so.

3. On or around February 7, 2025, Jack Cooper lost its largest customer when General Motors Corporation ("GM") publicly announced it was not renewing its contract with Jack Cooper. On or around February 8, 2025, Jack Cooper informed employees of its 1200 Corvette Dr., Bowling Green KY (the "Bowling Green Terminal") facility that their employment would be terminated on February 8, 2025. Approximately 92 employees at the Bowling Green Terminal lost their jobs.

4. Defendants failed to provide 60 days' advance written notice as required by the WARN Act, 29 U.S.C. § 2101 *et seq.,* to the affected employees.

## JURISDICTION AND VENUE

5. This Court has Jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 2104(a)(5).

6. Venue is proper in this district pursuant to 28 U.S.C. § 123(b) and 29 U.S.C. § 2104(a)(5).

## PARTIES

7. Plaintiff McKinley Archie is a resident of the United States and lives in Jefferson County, Kentucky. Plaintiff Archie was employed by Jack Cooper at the Louisville Terminal and lost his employment with Jack Cooper as part of the Louisville Terminal Closure. McKinley Archie at all relevant times was employed by Jack Cooper and worked at the Louisville Terminal for more than six months prior to January 2, 2025. Plaintiff Archie is an "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7).

8. Plaintiff Kenneth Johnson is a resident of the United States and lives in Warren County, Kentucky. Plaintiff Johnson was employed by Jack Cooper at the Bowling Green Terminal and at all relevant times and worked there for more than six months prior to February 8, 2025. Plaintiff Johnson is an "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7).

9. Defendant Jack Cooper Transport Company, LLC is a Georgia corporation with its principal place of business at 630 Kennesaw Due West Rd., Kennesaw, GA 30152. It may be served via its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092. Defendant Jack Cooper Transport Company, LLC is listed at the company providing notice to the Kentucky Department of Labor for the plant closures at issue in this litigation.

10. Defendant Jack Cooper Holdings, LLC is a Kansas corporation with its principal place of business at 2345 Grand Blvd, Suite 2400, Kansas City, MO, 64108 but has its principal record address at 630 Kennesaw Due West Rd., Kennesaw, GA 30152. It may be served via its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092. Upon information and belief, Jack Cooper Holdings, LLC is a parent or subsidiary of Defendant Jack Cooper Transport Company, LLC and to the extent that it employed any employee at the Louisville Terminal or the Bowling Green Terminal should be considered the joint employer with Jack Cooper Transport Company, LLC of any such employee.

11. Defendant Jack Cooper Investments, Inc, is a Georgia corporation with its principal place of business at 630 Kennesaw Due West Rd., Kennesaw, GA 30152. It may be served via its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092. Upon information and belief, Jack Cooper Investments, Inc is a parent or subsidiary of Defendant Jack Cooper

Transport Company, LLC and to the extent that it employed any employee at the Louisville Terminal or the Bowling Green Terminal should be considered the joint employer with Jack Cooper Transport Company, LLC of any such employee.

## FACTS

### I. Jack Cooper Is One Of The Nation's Largest Auto Transport Companies But Lost Its Two Largest Customers In Early 2025 Resulting In Mass Layoffs Across Its Operations.

12. Jack Cooper is one of the largest privately owned auto transport and specialized vehicle logistics providers in the US, with terminal operations located throughout the Midwest, Pacific Northwest, Canada, and Mexico. Originally Founded in 1928 as a carrier for General Motors product from the Leeds Assembly Plant in Kansas City, Missouri, the company is presently owned and operated by the Riggs family. Through many acquisitions Jack Cooper expanded its footprint, including United Transports, Inc. in 1984 and Pacific Motor Trucking Co. in 1988. In 2009, JCT combined with Active Transport LLC of Joplin, MO. DMT Trucking – the fourth largest union car-haul trucking company in the US, joined the JCT family in 2011.

13. Jack Cooper's primary business is hauling cars and trucks from vehicle manufacturing facilities to dealerships or other transportation ports in the large network of rail and over-the-road transportation terminals to facilitate cars getting to end user customers.

14. Prior to 2025, Jack Cooper's second largest customer was Ford. Upon information and belief, Jack Cooper knew or should have known that its relationship with Ford would soon be ending. Instead of promptly alerting its many drivers and employees that they would face layoffs, Jack Cooper waited until Ford announced the end of the relationship to inform employees that Jack Cooper would have to terminate their employment.

15. Prior to 2025, Jack Cooper's largest customer was GM. Upon information and belief, Jack Cooper knew or should have known that its relationship with GM would soon be ending. Instead of promptly alerting its many drivers and employees that they would face layoffs, Jack Cooper waited until GM announced the end of the relationship to inform employees that Jack Cooper would have to terminate their employment.

16. At the time of the Ford and GM announcements, Jack Cooper employed approximately 2,500 employees, 1,400 of whom are union-represented, mainly through the Teamsters.

17. The Ford announcement affected Jack Cooper's terminals in Dearborn and Wayne Michigan and includes the following facilities outside of Michigan: Avon Lake, Ohio; Liberty, Missouri; Cottage Grove, Minnesota, and Louisville, Kentucky.

18. Once Ford gave Jack Cooper notice that it was losing its contract, Jack Cooper had to start seeking new contract terms with its other customers because it needed more money to offset the loss of Ford. Jack Cooper's negotiations with GM over its contract intensified but Jack Cooper knew or should have known that its negotiations with GM would result in the same outcome with Ford: namely the termination of the contract with GM.

19. The GM announcement affected Jack Cooper terminals in Fairfax, Kansas; Fort Wayne, Indiana; Bowling Green, Kentucky; Lansing, Michigan; Flint, Michigan; and Arlington, Texas.

**II.   Jack Cooper Terminates Employees Without Giving 60 Days Of Notice.**

20. On January 14, 2025, Jack Cooper sent notice to the Kentucky Department of Labor that all of its drivers and employees at the Louisville Terminal would be terminated as of January 31, 2025. Thereafter, all employees of Jack Cooper at the Louisville Terminal were terminated with their last day of employment of January 31, 2025. Although Jack Cooper provided a WARN Act notice to the Kentucky Department of Labor—it did not do so 60 days before shuttering its operations at the Louisville Terminal. No notice of any kind was provided to any affected employee prior to January 2, 2025.

21. On February 8, 2024, Jack Cooper sent notice to the Kentucky Department of Labor that all of its drivers and employees at the Bowling Green

7

Terminal would be terminated as of February 8, 2025. This caught numerous employees off guard as no one anticipated this immediate shutdown of operations. Some Jack Cooper employees remained on the road and suffered significant complications trying to get back home given the abrupt termination of their employment. In all, at least 92 employees were terminated on February 8, 2024, which constitutes the entire Jack Cooper operating unit at the Bowling Green Terminal.

## CLASS ACTION ALLEGATIONS

22. Plaintiffs brings their WARN Act claim as a Class Action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following sub classes:

> **Louisville Terminal Subclass**: All employees of Jack Cooper working at the Louisville Terminal whose employment was permanently terminated or temporarily suspended within 30 days of January 2, 2025.
>
> **Bowling Green Terminal Subclass**: All employees of Jack Cooper working at the Bowling Green Terminal whose employment was permanently terminated or temporarily suspended within 30 days of February 8, 2025.

23. Class Action treatment of Plaintiffs WARN Act claims is appropriate because all of Federal Rule of Civil Procedure 23's Class Action requisites can be satisfied. For example:

   a. The class includes, upon information and belief, over 50 class members, and, as such, is so numerous that joinder of all the class members is

impracticable under these circumstances, thereby satisfying Federal Rule of Civil Procedure 23(a)(1);

b. Questions of law and fact are common to the class, including, *inter alia*, whether:

   i. Defendants provided adequate notice of its plant closing under the WARN Act, 29 U.S.C. § 2102;

   ii. Defendants actions constitute a "plant closing" as that term is used in the Warn Act;

   iii. Whether the Louisville Terminal and the Bowling Green Terminal are "single site of employment" as those terms are used in the WARN Act;

   iv. Whether the abrupt termination of operations at the Louisville Terminal or the Bowling Green Terminal constituted a "Plant Closure" as that term is used in the WARN Act; and

   v. Whether Jack Cooper can take shelter in the unforeseeable business circumstance exception for its failure to provide 60-days of notice for the plant closures of the Louisville and Bowling Green Terminals.

Thus, Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2);

    c. Plaintiffs are members of the class, and their claims are typical of the claims of other class members. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of other class members. Thus, Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3); and

    d. Plaintiffs will fairly and adequately represent the class and its interests. Moreover, Plaintiffs have retained competent and experienced counsel who will effectively represent the interests of the class. Thus, Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4).

24. McKinley Archie is an adequate class representative for the Louisville Terminal Subclass. Kenneth Johnson is an adequate class representative for the Bowling Green Subclass.

25. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants and/or because adjudications with respect to individual class members would as a practical matter be dispositive of the interests of non-party class members.

26. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant acted or refused to act on grounds generally

applicable to the class, making declaratory and injunctive relief appropriate with respect to Plaintiffs and the class as a whole.

27. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any question affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication for this litigation.

## COUNT I:
## VIOLATIONS OF THE WARN ACT, 29 USC §§ 2101, *et seq*.
## (WARN Act)
## (For Louisville Terminal)

28. Plaintiffs re-allege and incorporate all preceding paragraphs as if set forth in full here.

29. Jack Cooper is an "employer" within the meaning of the WARN Act. 29 U.S.C. § 2101(a)(1).

30. Plaintiff Archie and those he seeks to represent were at all relevant times "affected employees" within the meaning of the WARN Act. 29 U.S.C. § 2101(a)(5).

31. The January 31, 2025, closing of Jack Cooper's operations at the Louisville Terminal constituted a "plant closing" as defined in 29 U.S.C. § 2101(a)(2), since it was a permanent or temporary shutdown of a single site of employment or one or more operating units within a single site of employment that

resulted in an employment loss for 50 or more employees. In addition, upon information and belief, the shutdown will last longer than 30 days.

32. To the extent that the January 31, 2025, closing of Jack Cooper's Louisville Terminal operations is not a "plant closing" as defined in 29 U.S.C. § 2101(a)(2), the closing constitutes a "mass layoff" as that term is used in 29 U.S.C. § 2101(a)(3), since it resulted in an employment layoff of at least 33 percent of the employees and at least 50 employees of Jack Cooper at the Louisville Terminal.

33. The January 31, 2025, closing of Jack Cooper's Louisville Terminal operations terminated at least 50 employees resulting in "employment losses" as defined in 29 U.S.C. §§ 2101(a)(3)(B)(i)(I) and (II).

34. The WARN Act requires employers to provide 60-days' notice of any plant closing or mass layoff "to each representative of the affected employees . . . or, if there is no such representative at that time, to each affected employee," 29 U.S.C. § 2102(a)(1), and "to the State or entity designated by the State to carry out rapid response activities under [29 U.S.C. §] 3174(a)(2)(A)," as well as to "the chief elected official of the local government within which such closing or layoff is to occur." 29 U.S.C. § 2102(a)(2).

35. On information and belief, prior to January 2, 2025, Defendants did not give any prior written notice of the plant closing and/or mass layoff to any "affected employee," including Plaintiffs and those they seek to represent, as that term is

defined in 29 U.S.C. § 2101(a)(5), nor upon information and belief did Defendants give any prior written notice to the Kentucky Department of Labor or to the chief elected official of the local government within which the mass layoff was ordered.

36. Defendants violated the WARN Act by failing to give timely written notice of the plant closings/mass layoffs as required by 29 U.S.C. § 2102(a), which began on or about January 31, 2025, and which was continuing as of the filing of this complaint.

37. As such, Plaintiffs and those they seek to represent are "aggrieved employees" within the meaning of the WARN Act. 29 U.S.C. § 2104(a)(7).

38. The WARN Act expressly permits an "aggrieved employee" to bring a civil action individually and on behalf of all those similarly situated to seek relief for violations of the provisions of 29 U.S.C. § 2102. *See* 29 U.S.C. § 2104(5).

39. Moreover, Defendants' violations of the WARN Act were not in good faith, and Defendants had no reasonable grounds for believing that the plant closing or mass layoff it ordered was not in violation of the notice requirements at 29 U.S.C. § 2102.

### COUNT II:
### VIOLATIONS OF THE WARN ACT, 29 USC §§ 2101, *et seq.*
### (WARN Act)
### (For Bowling Green Terminal)

40. Plaintiffs re-allege and incorporate all preceding paragraphs as if set forth in full here.

41. Jack Cooper is an "employer" within the meaning of the WARN Act. 29 U.S.C. § 2101(a)(1).

42. Plaintiff Johnson and those he seeks to represent were at all relevant times "affected employees" within the meaning of the WARN Act. 29 U.S.C. § 2101(a)(5).

43. The February 8, 2025 closing of Jack Cooper's operations at the Bowling Green Terminal constituted a "plant closing" as defined in 29 U.S.C. § 2101(a)(2), since it was a permanent or temporary shutdown of a single site of employment or one or more operating units within a single site of employment that resulted in an employment loss for 50 or more employees. In addition, upon information and belief, the shutdown will last longer than 30 days.

44. To the extent that the February 8, 2025, closing of Jack Cooper's Bowling Green Terminal operations is not a "plant closing" as defined in 29 U.S.C. § 2101(a)(2), the closing constitutes a "mass layoff" as that term is used in 29 U.S.C. § 2101(a)(3), since it resulted in an employment layoff of at least 33 percent of the employees and at least 50 employees of Jack Cooper at the Louisville Terminal.

45. The February 8, 2025, closing of Jack Cooper's Bowling Green Terminal operations terminated at least 50 employees resulting in "employment losses" as defined in 29 U.S.C. §§ 2101(a)(3)(B)(i)(I) and (II).

46. The WARN Act requires employers to provide 60-days' notice of any plant closing or mass layoff "to each representative of the affected employees . . . or, if there is no such representative at that time, to each affected employee," 29 U.S.C. § 2102(a)(1), and "to the State or entity designated by the State to carry out rapid response activities under [29 U.S.C. §] 3174(a)(2)(A)," as well as to "the chief elected official of the local government within which such closing or layoff is to occur." 29 U.S.C. § 2102(a)(2).

47. On information and belief, prior to February 8, 2025, Defendants did not give any prior written notice of the plant closing and/or mass layoff to any "affected employee," including Plaintiffs and those they seek to represent, as that term is defined in 29 U.S.C. § 2101(a)(5), nor upon information and belief did Defendants give any prior written notice to the Kentucky Department of Labor or to the chief elected official of the local government within which the mass layoff was ordered.

48. Defendants violated the WARN Act by failing to give timely written notice of the plant closings/mass layoffs as required by 29 U.S.C. § 2102(a), which began on or about February 8, 2025, and which was continuing as of the filing of this complaint.

49. As such, Plaintiffs and those they seek to represent are "aggrieved employees" within the meaning of the WARN Act. 29 U.S.C. § 2104(a)(7).

50. The WARN Act expressly permits an "aggrieved employee" to bring a civil action individually and on behalf of all those similarly situated to seek relief for violations of the provisions of 29 U.S.C. § 2102. See 29 U.S.C. § 2104(5).

51. Moreover, Defendants' violations of the WARN Act were not in good faith, and Defendants had no reasonable grounds for believing that the plant closing or mass layoff it ordered was not in violation of the notice requirements at 29 U.S.C. § 2102.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. Certification of the Class as a Class Action pursuant to Federal Rule of Civil Procedure 23(b) and designation of Plaintiffs as a representative of the Sub Classes and their counsel of record as Class Counsel;

2. A declaration that Defendants have violated the WARN Act;

3. A judgment against Defendants and in favor of Plaintiffs and those they seek to represent for back pay to the fullest extent permitted by the WARN Act, 29 USC § 2104(a)(1)(A);

4. A judgment against Defendants and in favor of Plaintiffs and those they seek to represent for the loss of benefits, including, but not limited to, medical expenses incurred by Plaintiffs and those they seek to represent during the

employment loss, to the fullest extent allowable under the WARN Act, 29 U.S.C. § 2104(a)(1)(B);

5. A finding that Defendants' violations of the WARN Act were and are willful, not in good faith, and that Defendants had no reasonable grounds for believing that its plant closing and/or mass layoff was not in violation of the notice requirements of the WARN Act, 29 U.S.C. § 2102;

6. A judgment against Defendants and in favor of Plaintiffs and those they seek to represent for litigation costs, expenses, attorney's fees to the fullest extent permitted under the WARN Act, 29 U.S.C. § 2104(a)(6), and for discretionary costs pursuant to Federal Rule of Civil Procedure 54(d);

7. A judgment against Defendants for civil penalties to the fullest extent allowable under the WARN Act, 29 U.S.C. § 2104(a)(3); and

8. Such other and further relief as this Court deems just and proper and allowed under the WARN Act.

This the 26th day of February, 2025.

                              Respectfully submitted,

                              <u>By: s/ *Benjamin A. Gastel*</u>
                              Benjamin A. Gastel (GA Bar #432776)
                              **HERZFELD, SUETHOLZ, GASTEL,**
                              **LENISKI & WALL, PLLC**
                              223 Rosa L. Parks Avenue, Suite 300
                              Nashville, TN 37203
                              Ph: (615) 800-6225
                              Fax: (615) 994-8625
                              ben@hsglawgroup.com